**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 12-4546

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DELMOND CUNNINGHAM,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Frank D. Whitney, District Judge. (3:10-cr-00040-FDW-1)

Submitted: September 19, 2013    Decided: November 13, 2013

Before TRAXLER, Chief Judge, MOTZ, Circuit Judge, and Gina M. GROH, United States District Judge for the Northern District of West Virginia, sitting by designation.

Affirmed in part, reversed in part, and remanded by unpublished per curiam opinion.

Henderson Hill, Executive Director, Joshua B. Carpenter, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Asheville, North Carolina, for Appellant. Anne M. Tompkins, United States Attorney, Charlotte, North Carolina, Amy Elizabeth Ray, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Appellant Delmond Cunningham appeals his conviction following a conditional guilty plea to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He now challenges the district court's denial of his motion to suppress the firearm, as well as the district court's partial denial of his motion to suppress statements he made to a police officer while in custody. We affirm in part, reverse in part, and remand.

I.

On September 21, 2009, Corporal David Johnston with the Mecklenburg County Sheriff's Department was attempting to serve several outstanding arrest warrants and a domestic violence protection order on Cunningham. He happened to encounter Cunningham at a gas station in Charlotte, North Carolina, and observed Cunningham begin to pump gas into a pickup truck that was parked in front of Corporal Johnston's patrol car. Based on Corporal Johnston's earlier conversations with acquaintances of Cunningham, he expected Cunningham to be armed. Corporal Johnston was also aware of Cunningham's criminal history, which included gun charges and gun-related offenses.

When Corporal Johnston approached Cunningham and attempted to talk to him, Cunningham fled on foot. Corporal Johnston gave chase and caught up with him about 25 yards away from the gas

2

station. A physical struggle ensued. Corporal Johnston used a taser to subdue Cunningham during the struggle and, with the assistance of additional responding officers, handcuffed Cunningham and took him into custody. Both Cunningham and Corporal Johnston sustained minor injuries and were treated at the scene.

Corporal Johnston then returned with Mecklenburg County Sheriff's Deputy John Forrest to the pickup truck, which was still parked at the gas pump. Corporal Johnston approached the driver's side of the truck. He testified that he looked into the driver's side window and observed a black .45 caliber pistol sitting in plain view on the bench seat of the truck. Corporal Johnston then entered the truck and seized the firearm. Deputy Forrest approached the passenger's side of the truck but did not see the firearm until Corporal Johnston retrieved it. However, it was his understanding that the firearm was found on the bench seat between the passenger's side and driver's side of the truck. He also recalled that there was a middle console that had been folded down onto the bench seat.

Meanwhile, back at the scene of the arrest, Cunningham began to complain of chest pains, and Deputy Forrest was asked to transport him to the emergency room at a nearby hospital. It is undisputed that Cunningham was not read his Miranda rights prior to being taken to the hospital. While waiting in the

treatment room, Deputy Forrest commented to Cunningham "that he was smart for not trying to go back to the truck because a handgun was found in the front seat and it could have made the situation a lot worse than it was." J.A. 134. According to Deputy Forrest, Cunningham responded that "that was one of the reasons why he ran from Corporal Johnston because he didn't want nothing bad to happen." J.A. 135. Deputy Forrest added that "shortly after" he made the statement to Cunningham, Cunningham asked "two [or] three times if he was going to be charged with possession of the handgun, because he stated he was a convicted felon." J.A. 136. Deputy Forrest told Cunningham that he did not know.

Prior to entering his conditional guilty plea, Cunningham moved to suppress the firearm seized by Corporal Johnston at the scene and the statements he made to Deputy Forrest at the hospital. The district court denied the motion to suppress the firearm based upon the plain-view exception to the warrant requirement and, in the alternative, on the basis that Cunningham abandoned the truck when he ran and the firearm would have been inevitably discovered when the truck was moved and inventoried. The truck was not registered to Cunningham.

The district court granted in part and denied in part the motion to suppress the statements. Although finding that Deputy Forrest did not actually intend to elicit an incriminating

4

response when he initiated the conversation with Cunningham, the court held that Deputy Forrest's comment constituted custodial interrogation because it was reasonably likely to elicit such an incriminating response. Thus, the district court suppressed Cunningham's initial response explaining why he did not return to the truck. However, with regard to Cunningham's follow-up questions -- as to whether he would be charged with possessing the gun -- the district court held that they "were not [made] in response to any form of statement or question or comment," and the court declined to suppress them. J.A. 190.[1] This appeal followed.

## II.

In considering the denial of a motion to suppress, we review the district court's legal determinations de novo and its factual findings for clear error, viewing the evidence in the light most favorable to the government. See United States v. Kelly, 592 F.3d 586, 589 (4th Cir. 2010). "[W]e accord particular deference to a district court's credibility determinations. This deference is based on the district court's role of observing the witnesses and of weighing their

---

[1] The district court also denied Cunningham's motion to suppress a statement he made to his mother in the presence of Deputy Forrest. Cunningham has not appealed this portion of the ruling.

5

credibility." United States v. Hilton, 701 F.3d 959, 964 (4th Cir. 2012) (citation omitted).

## A.

"The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" United States v. Rumley, 588 F.3d 202, 205 (4th Cir. 2009) (quoting U.S. Const. amend. IV). The "plain-view" exception to the warrant requirement, however, allows the warrantless seizure of evidence when an officer is lawfully in the area in which he sees the object, has lawful access to the object, and the incriminating nature of the object is apparent. See id.

In this case, Cunningham argues only that the district court clearly erred in crediting Corporal Johnston's testimony that he observed the .45 caliber firearm in plain view through the driver's side window before entering the vehicle and, therefore, that the court erred in denying his motion to suppress the firearm. We disagree.

In the post-arrest affidavit, Corporal Johnston stated that the firearm was located "on [the] front passenger seat in plain view." J.A. 194. According to a report prepared by an ATF agent several months after the seizure, Corporal Johnston "went back to the truck Mr. Cunningham was at and looked in the

6

window" and "[b]etween the driver's seat and the center console, in plain view, was a loaded .45 caliber pistol." J.A. 195.

At the evidentiary hearing, Corporal Johnston testified, consistent with the earlier reports, that he observed the firearm in plain view through the truck window before entering the vehicle. His testimony varied slightly as to the exact location of the firearm on the bench seat; for example, he described the area variously as "between the passenger and driver's seat in plain view," J.A. 67, "right past the driver's seat in between – where you buckle your seat at" or "[t]o the right of the driver's seat . . . [n]ext to the buckle." J.A. 71. On cross-examination, Corporal Johnston testified that the seat was "one long seat" or a "running seat" and that "[i]f it's past the buckle, [he] consider[ed] that the passenger seat." J.A. 103. Corporal Johnston did not recall a center console and did not recall telling the ATF agent that there was a center console.

Deputy Forrest testified that he did not see the firearm on the seat from the passenger's side but did recall that the center console had been folded down onto the seat when he entered the vehicle. It was his understanding that the firearm was located between the passenger's side and the driver's side of the truck seat.

7

Cunningham argues that the district court clearly erred in crediting Corporal Johnston's testimony and denying the motion to suppress on "plain view" grounds because Corporal Johnston's testimony was inconsistent with his earlier statements and Deputy Forrest's testimony regarding precisely <u>where</u> the firearm was observed on the seat of the truck and <u>whether</u> a center console was up or down on the bench seat when the firearm was observed. The district court, however, specifically considered and rejected Cunningham's credibility argument, as follows:

> The officer today was absolutely consistent about the weapon being on the other side of the buckle, and . . . you argued that that's inconsistent. It's not necessarily inconsistent. People don't have exact perfect recollection of every minute fact. And you're saying it's the passenger side, can't . . . be the driver's side. But the officer said it was one continuous seat. And then the deputy came back and said it was one continuous seat. There was disagreement . . . about the console. But the salient facts are the officer consistently testified that the weapon was in plain view and he saw it on the other side of the buckle. . . . [T]oday he was subject to intense cross-examination and he still came back with what the Court viewed as a consistent answer.

J.A. 183-84. The district court went on to find that Corporal Johnston was "highly credible" and that, while there were "modest inconsistencies," J.A. 186, Corporal Johnston "stood firm" on "cross-examination on those allegedly prior inconsistent statements . . . as to the weapon being on the other side of the buckle." J.A. 187. Further explaining his credibility determination, the district court noted:

8

> None of us are vehicle designers. We don't know what different parts of a long seat are called. . . . [H]e used the term "passenger seat" . . . in one of his earlier statements. He explained today exactly what he saw and when he was asked specifically about passenger seat, I thought his explanation [w]as highly credible. I thought his testimony is highly credible, and so I do credit it and find that it survived a very excellent cross examination. And thus he saw the weapon in plain view from outside the vehicle.

J.A. 187.

We hold that the district court did not clearly err in crediting Corporal Johnston's testimony that he observed the firearm on the seat of the truck in plain view before opening the driver's side door, providing probable cause to conduct the warrantless search and seize the loaded firearm. The district court clearly considered all of the evidence when rendering its credibility determination, including Corporal Johnston's prior statements and Deputy Forrest's testimony. Furthermore, Corporal Johnston's prior statements are consistent with his testimony that he observed the firearm in plain view through the driver's side window before entering the vehicle, and the alleged inconsistencies pertain only to what one might call the area of the seat where the firearm was observed and whether there was a center console folded down at the time. Such minor discrepancies do not so undermine his testimony that we would upset the district court's comprehensive credibility determination. Cunningham's argument that Corporal Johnston's

9

testimony was internally inconsistent or implausible on its face is devoid of evidentiary support and clearly without merit.[2] Accordingly, we affirm the district court's order denying Cunningham's motion to suppress the firearm.[3]

### B.

It is well established that persons subjected to custodial interrogation are entitled to the safeguards prescribed by Miranda v. Arizona, 384 U.S. 436 (1966). In Miranda, the Supreme Court afforded protection to the Fifth Amendment privilege against compelled self-incrimination "from the coercive pressures that can be brought to bear upon a suspect in the context of custodial interrogation." Berkemer v. McCarty, 468 U.S. 420, 428 (1984). A suspect interrogated while in police custody "'must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an

---

[2] Cunningham's attempt to rely upon factual representations contained in the government's pre-hearing memorandum in opposition to the motion to suppress also does not avail him. The memorandum is not evidence and Corporal Johnston was never questioned about any pre-hearing contacts or interviews he may have had with the prosecution.

[3] In light of our ruling, we need not consider the district court's alternative finding that Cunningham abandoned the truck when he ran from Corporal Johnston and that the firearm would have been inevitably discovered when the truck was moved from the gas station and inventoried.

attorney, either retained or appointed.'" Id. at 429 (quoting Miranda, 384 U.S. at 444). Statements made by a suspect during custodial interrogation are inadmissible as evidence of guilt unless prior Miranda warnings were given. See id. at 429. However, "Miranda does not protect an accused from a spontaneous admission made under circumstances not induced by the investigating officers or during a conversation not initiated by the officers." United States v. Rhodes, 779 F.2d 1019, 1032 (4th Cir. 1985) (internal quotation marks omitted).

It is undisputed that Cunningham was in custody and that Miranda warnings had not been given prior to his conversation with Deputy Forrest at the hospital. It is also undisputed that Deputy Forrest initiated the conversation about the firearm and, in doing so, informed Cunningham that the firearm had been recovered from the truck. The district court found that Deputy Forrest's statement to Cunningham about the firearm, while not intended to elicit a response, nonetheless constituted "custodial interrogation" for purposes of Miranda. See Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980) (holding "that the Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent," including "any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect") (footnote

11

omitted).  And the government has not challenged this determination on appeal.

Thus, the only issue before us is whether Cunningham's follow-up questions, as to whether he would be charged with the firearm because he was a convicted felon, were also required to be suppressed because they too were made in response to Deputy Forrest's initial statement, or whether the follow-up questions amounted to a spontaneous admission that falls outside of the protection of Miranda.  In light of Deputy Forrest's testimony that Cunningham's questions were posed "shortly after the statement [Deputy Forrest] made," J.A. 136, we are constrained to hold that the district court erred in denying Cunningham's motion to suppress the follow-up questions.  Although the questions did pertain more to Cunningham's concerns about how the discovery of the firearm might affect his future, they were nonetheless directly related to the subject of Deputy Forrest's initial statement about the firearm, which the district court found was reasonably likely to elicit just such an incriminating admission.  Accordingly, we reverse the district court's order denying Cunningham's motion to suppress the follow-up questions posed by Cunningham to Deputy Forrest.

### III.

For the foregoing reasons, we affirm the district court's order denying Cunningham's motion to suppress the firearm.  We

12

reverse the district court's order denying Cunningham's motion to suppress the follow-up questions he asked of Deputy Forrest at the hospital, and remand for further proceedings. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED IN PART,</u>
<u>REVERSED IN PART,</u>
<u>AND REMANDED</u>